UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Docket no. 2:13-cr-00153-GZS |
| GEORGE NOONAN, | ) | |
| JONATHAN SULLIVAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO SUPPRESS**

Before the Court is Defendant Jonathan Sullivan's Motion To Suppress With Incorporated Memorandum Of Law: Intercepted Telephone Conversations (ECF No. 76) ("Motion to Suppress"). Defendant George Noonan joined the Motion to Suppress. (ECF No. 77.) The Court has determined that no hearing is necessary to decide these pending motions. For the reasons explained below, the Court DENIES the Motion to Suppress. (ECF No. 76 & 77.)

**I. BACKGROUND**

On December 28, 2012, the Government submitted an application and 73-page supporting affidavit of FBI Special Agent Patrick M. Clancy (the "December 28 Affidavit") to the Court. The application sought authorization to intercept wire and electronic communications occurring over the cellular telephone assigned telephone number (207) 523-9978 ("Target Telephone #1" or "TT1"). The Court then authorized interceptions of wire and electronic communications occurring over TT1, and original interception of Target Telephone #1 began on December 28, 2012.

On January 25, 2013, the Government submitted an application and 70-page supporting affidavit of SA Clancy (the "January 25 Affidavit") to a different judge of this Court. This

application sought a 30-day extension of wire and electronic interceptions occurring over TT1 as well as original wire interceptions occurring over the cellular telephone assigned telephone number (781) 983-7616 ("Target Telephone #2" or "TT2"). Subsequently, the Court issued an Order authorizing an additional 30 days of interceptions of wire and electronic communications occurring over TT1 and an original 30 days of interceptions over TT2. Interception of TT1 pursuant to this authorization began on January 25, 2013 and ended on February 23, 2013. Interception of TT2 pursuant to this authorization began on January 26, 2013 and ended on February 24, 2013.

On April 18, 2013, the Government submitted an application and 66-page supporting affidavit of SA Clancy (the "April 18 Affidavit") to the Court. The application sought authorization to renew interceptions of wire and electronic communications occurring over TT1. The Court then authorized interceptions of wire and electronic communications occurring over TT1. Interception of TT1 pursuant to this authorization began on April 23, 2013 and ended on May 22, 2013.

On June 14, 2013, a criminal complaint was filed against George Noonan alleging a single count of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1.) On September 10, 2013, an indictment was filed against Noonan charging one count of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). (ECF No. 30.) On December 12, 2013, a superseding indictment was filed against Noonan and George Sullivan, alleging seven counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) against Noonan (Counts 1-7), one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) against Noonan (Count 8) and one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 against Noonan and Sullivan.

On May 5, 2014, Sullivan filed this Motion to Suppress (ECF No. 76), which was joined by Noonan (ECF No. 77). Through the Motion to Suppress Wiretap, Defendants Sullivan and Noonan raise five challenges to the wiretap evidence: (1) the intercept orders are insufficient; (2) the applications failed to establish necessity; (3) the affidavits include false statements and material omissions; (4) conversations were not properly minimized; and (5) the affidavits relied on informants with compromised credibility. The Court will address each argument in turn.

## II. DISCUSSION

### A. The Intercept Orders

Through the Motion to Suppress, Defendants argue that the applications for the wiretaps and the Orders authorizing intercepts are facially insufficient because they fail to: (1) provide a sufficiently particular description of the type of communication sought to be intercepted; (2) describe the particular offense to which they relate; and (3) identify the law enforcement officers conducting the interceptions. The Court notes that this argument is copied almost verbatim from a suppression motion filed in United States v. Hasan Worthy, No. 2:12-cr-135-DBH. (Compare Motion to Suppress (ECF No. 76) at 3-6, with Worthy Motion to Suppress (ECF. No. 47 in 2:12-cr-135-DBH) at 6-11.) In United States v. Worthy, the Court dismissed this argument in a footnote, finding that:

> The defendant says that the Court's two wiretap Orders fail the statutory requirement of "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates." Mot. to Suppress Wire Intercepts, 2:12–cr–135–DBH, at 7 (ECF No. 47) (quoting 18 U.S.C. § 2518(4)(c)). I disagree. The Orders specify the telephone numbers and electronic serial numbers in question and extend monitoring permission to numbers accessed through them and to changed telephone numbers assigned to a particular landline telephone. They also allow listening to background conversations. They thus describe the type of communication to be intercepted. The Orders also enumerate the federal crimes being investigated, along with statutory citations.

> The defendant further asserts that the Orders fail the requirement that interception not be for "any period longer than is necessary to achieve the objective of the authorization," or in any event 30 days. Mot. to Suppress Wire Intercepts, 2:12–cr–135–DBH, at 8 (ECF No. 47) (quoting 18 U.S.C. § 2518(5)). Once again, I disagree. The Orders limit the interceptions to the earlier of 30 days or when they "fully reveal" information about the crimes.
>
> The defendant also argues that the Orders fail to identify "the agency authorized to intercept the communications." Mot. to Suppress Wire Intercepts, 2:12–cr–135–DBH, at 9 (ECF No. 47) (quoting 18 U.S.C. § 2518(4)(d)). In fact, the Orders identify the investigating agency as "special agents of the United States Drug Enforcement Administration," and they were entered upon the affidavits of a DEA special agent. It is true that the Orders' interception and recording authority extends to "other investigative and law enforcement officers, pursuant to the application of Assistant United States Attorney Daniel J. Perry," but the listening post was designated as the DEA Resident Office in Portland Maine and the authority of other law enforcement officers therefore reasonably is understood as in assistance of the DEA.

United States v. Worthy, 2:12-CR-135-DBH, 2012 WL 3960315, at *5 n.4 (D. Me. Sept. 10, 2012).

As in Worthy, the Court concludes that all three applications and orders in this case: (1) adequately describe the type of communications to be intercepted; (2) include a list of individuals from whom wire communications would be intercepted; (3) include a list of telephone number(s) to be intercepted; (4) include a list of offenses which were the subject of communications to be intercepted; and (5) identify the listening post as the FBI office in Portland, Maine. Therefore, the Court DENIES the Motion on this basis.

**B. Necessity**

Title 18, United States Code, Section 2518 requires that each application for interception of wire communications include certain information, including: "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(c). This "necessity requirement was designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v.

4

Rivera-Rosario, 300 F.3d 1, 18 (1st Cir. 2002) (internal citations and quotations omitted). "[T]he government is not required to show that other investigatory methods have been completely unsuccessful." Id. at 19 (internal citations omitted). The Government is also not required to "run outlandish risks or to exhaust every conceivable alternative before resorting to electronic surveillance." Id. (internal citations omitted). The test is a pragmatic one and requires reviewing courts, "in a practical and commonsense manner[,] to determine whether the facts which [the supporting affidavit] sets forth are 'minimally adequate' to support the findings made by the issuing judge." Id. at 19 n.23 (internal citations and quotations omitted).

To show necessity, "the government must demonstrate that it has made 'a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls." United States v. Lopez, 300 F.3d 46, 52 (1st Cir. 2002) (internal citations omitted). In applying the common sense rule, the Court considers the nature of the alleged crimes and may give weight to the opinion of investigating agents that, in the circumstances described, other means of investigation were too dangerous and might be counterproductive. See In re Dunn, 507 F.2d 195, 197 (1st Cir. 1974). Defendants' necessity challenge is primarily based on an assertion that confidential informants provided sufficient evidence to accomplish the objectives of the investigation. (See Motion to Suppress at 8-9.)

First, the application and affidavit establish that the first wiretap on TT1 was necessary to achieve the goals of the investigation. The December 28 Affidavit indicates that:

> A primary goal of this investigation and the anticipated prosecution is to identify the source(s) of supply for cocaine and any other illegal drugs for Noonan and other Target Subjects and to dismantle, charge, and convict the entire network of individuals in Maine, Massachusetts and elsewhere who supply drugs to, and receive drugs from, this organization.

The objective was not simply to obtain probable cause to arrest conspirators known by December 28, 2012. Instead, the objective was to identify, prosecute and convict Noonan's sources of supply for illegal drugs and other significant co-conspirators.

In the December 28 Affidavit, SA Clancy describes law enforcement efforts using traditional techniques. For example, confidential sources were used with success during the course of the investigation that preceded the application for the wire intercepts. As outlined in the affidavit, CS-1 was able to purchase drugs directly from Noonan and could continue to do so. Nonetheless, the December 28 Affidavit states:

> Additional controlled purchases from Noonan are likely to yield additional evidence of Noonan's involvement, they are unlikely to advance the investigation of Noonan's sources of supply, who are the primary targets of this investigation. CS-1 lacks information about the identities of Noonan's sources of supply, the distribution methods, or the management structure of the conspiracy. Furthermore, CS-1 lacks the ability to infiltrate the organization at a level necessary to learn vital information about the organization, such as its members and their roles within the organization.

(December 28 Affidavit ¶ 85.) The December 28 affidavit further describes how the other known confidential sources were of limited utility in achieving the goals of this investigation. Another shortcoming of the confidential sources was they were all subject to impeachment. The Government is entitled to secure evidence to corroborate testimony of cooperating sources who may be subject to impeachment. See United States v. Kelley, 140 F.3d 596, 605 (5th Cir. 1998).

Although the use of confidential sources provided some valuable assistance in the investigation much of the conspiracy's scope and dealings remained undisclosed, rendering the wiretaps necessary. See United States v. Bennett, 219 F.3d 1117, 1122-23 (9th Cir. 2000) (informant's successful undercover purchase of narcotics did not defeat necessity showing where informant remained unable to penetrate the organization and was subject to impeachment as informant).

In their attack on the necessity, Defendants claim that "the investigative techniques being employed by the Government were in fact working, thereby countering the necessity of a wiretap order." (Motion to Suppress at 9.) This argument is too narrow. As described above, one informant's ability to make ongoing controlled purchases of drugs from Noonan would not achieve the stated objectives of the investigation, which were substantially broader. Because the investigation targeted the entire organization and unknown confederates, CS-1's ability to buy drugs from Noonan was insufficient to achieve the goals of the investigation.

The investigation at issue here also included use of pole cameras, surveillance and use and analysis of court-authorized pen registers and telephone records. (December 28 Affidavit ¶¶ 100-110) Employment of such methods of law enforcement, even with some success, weighs in favor of a finding of necessity rather than against one. See, e.g., United States v. David, 940 F.2d 722, 729 (1st Cir. 1991) (rejecting defendant's necessity challenge where affiant had set forth traditional methods used that over two-month period did not disclose identities of defendant's principal cohorts, including questioning of four informants, use of beeper clone, pen register and unsuccessful attempt to introduce undercover agent).

SA Clancy explains the risk of flight and compromise to the objectives of the investigation with premature arrests of lower level participants (December 28 Affidavit ¶¶ 95-96), the inability to introduce an undercover agent (id. ¶ 99), shortcomings with physical and electronic surveillance (id. ¶¶ 100, 105 & 108-109), shortcomings with the financial investigation (id. ¶¶ 111-112), shortcomings with grand jury testimony and subpoenas (id. ¶¶ 113-117), shortcomings with trash collection (id. ¶ 118-119), premature implementation of search warrants (id. ¶ 120) and limitations with collection of historical text message data (id. ¶ 121).

Moreover, the December 28 Affidavit describes how

> the almost year-long investigation has nonetheless failed to positively identify sources of drug supply as well as the full scope of the organization, the role each participant plays, the methods of distribution and transportation of narcotics, or the means of collecting, transporting, distributing and concealing the drug profits and assets, and other pertinent details of the organization.

(December 28 Affidavit ¶ 72). The December 28 Affidavit sufficiently demonstrates that the source(s) of supply were unknown and unlikely to be learned through traditional law enforcement techniques and that the wiretap was necessary to develop a provable case against all significant members of the conspiracy.

Defendants next argue that the January 25 Affidavit contains "the same conclusory statements made in the December [28] Affidavit" and that CS-1's recent controlled purchase of drugs from Noonan and his/her providing information about Richard Petrucci's involvement in other criminal activity undercuts necessity. Defendants make necessity challenges to the April Affidavit based on another controlled purchase with CS-1 and information from a new informant. However, as described below, the extension of the wiretap on TT1 and the activation of a wiretap on TT2 were necessary to achieve the goals of the investigation.

In the January 25 Affidavit, SA Clancy acknowledges that progress has been made but that the objectives of the investigation have not been accomplished. (January 25 Affidavit ¶ 91.) SA Clancy described the most recent drug purchase from Noonan and explained why CS-1's ongoing ability to purchase drugs from Noonan remained insufficient to accomplish the objectives of the investigation. (Id. ¶ 104.) SA Clancy also described how attempted purchases of drugs from Petrucci had proven unsuccessful and why attempts by CS-1 to learn more about the structure of the drug organization would be viewed as highly suspicious and could compromise the investigation. (Id.) SA Clancy stated his belief that purchasing stolen merchandise or placing bets

8

through Petrucci also would not accomplish the goals of the drug investigation. (Id. ¶ 105.) Defendants' argument that placing bets or purchasing stolen merchandise would be sufficient to leverage Petrucci's cooperation and result in the accomplishment of all objectives of the investigation is purely speculative and nothing more than the Monday morning quarterbacking described in United States v. Shipp, 578 F. Supp. 980, 989 (S.D.N.Y. 1984) ("Monday morning quarterbacking as to what investigative techniques the agents should have employed in addition to what they did employ is utterly unrealistic, if not naive. An affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every other possible means of investigation has not been exhausted. . . . Agents are not required to resort to measures that will be clearly unproductive. A reasoned explanation, grounded in the facts of the case, and which squares with common sense, is all that is required." (internal punctuation omitted).)

Defendants' challenge to the April 18 Affidavit is based on CS-1's ability to make drug purchases and the development of a new informant. SA Clancy described the most recent drug purchase from Noonan and explained why CS-1's ongoing ability to purchase drugs from Noonan still remained insufficient to accomplish the objectives of the investigation. (April 18 Affidavit ¶ 87.) SA Clancy also described the information received by CS-5 – the informant at issue in the Defendants' challenge to the April 18 Affidavit. Specifically, SA Clancy described CS-5's claims that he/she claims to have been approached about drug trafficking by members of this organization but declined. (Id. ¶ 91.) SA Clancy went on to state as follows:

> CS-5 claimed that he/she would be unable to purchase drugs from members of this organization. Based on information received from CS-5 and recorded conversations he/she shared with me, I do not believe that CS-5 is trusted by the members of this organization. Consequently, I believe he/she is unable to obtain any valuable intelligence through conversation. Because CS-5 claims not to be involved with

drug trafficking or money laundering, I do not believe that his/her cooperation could achieve the objectives of this investigation.

(Id.) Based on this analysis, there is no reason to conclude that necessity was compromised by CS-1's ability to buy drugs from Noonan or the information received from CS-5. In short, necessity clearly existed for the April wiretap. Thus, Defendants' Motion to Suppress is DENIED to the extent it argues necessity was not established.

### C. False Statements or Material Omissions

Defendants next argue that the wiretap affidavits contain false statements and material omissions. This argument is predicated on SA Clancy's statements that there was probable cause to believe that the targets were committing money laundering offenses. SA Clancy's affidavits set forth in substantial detail the facts giving rise to his belief that Noonan and others are involved in drug trafficking. It necessarily follows that members of this conspiracy would generate proceeds from a specified unlawful activity as defined in 18 U.S.C. 1956(c)(7)(B)(i). Therefore, financial transactions with these proceeds constitute money laundering. Faced with a similar objection, Judge Hornby concluded:

> [A] specially trained agent . . . legitimately may draw upon her knowledge and expertise in crafting an affidavit in support of a wiretap application. See, e.g., Ashley, 876 F.2d at 1072 "([T]he issuing court may properly take into account affirmations which are founded in part upon the experience of specially trained agents."). In the circumstances, [Defendant] does not make a substantial showing, sufficient to warrant an evidentiary hearing, that the challenged statement was knowingly or intentionally false or made with reckless disregard for its truth

United States v. Nash, 2011 U.S. Dist. LEXIS 41313, 31-32 (D. Me. Apr. 15, 2011). Even if there was an insufficient basis for SA Clancy's belief that calls involving money laundering would be intercepted, and the Court does not so find, Defendants have not identified any particular calls that warrant suppression. Indeed, any calls that involve the laundering of drug proceeds are also calls

that are properly intercepted as related to the predicate Title 21 drug offenses. Defendants' Motion is DENIED on this basis.

### D. Minimization Procedures

Section 2518(5) sets forth the minimization requirement of the statute governing wiretaps, providing in relevant part that:

> Every order and extension thereof shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter[.]

18 U.S.C. § 2518(5). "The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." Scott v. United States, 436 U.S. 128, 140 (1978). "The minimization requirement 'spotlights the interest in confining intrusions as narrowly as possible so as not to trench impermissibly upon the personal lives and privacy of wiretap targets and those who, often innocently, come into contact with such suspects.'" Lopez, 300 F.3d at 57 (citing United States v. Hoffman, 832 F.2d 1299, 1307 (1st Cir. 1987)). The standard is one of "objective reasonableness." United States v. Charles, 213 F.3d 10, 22 (1st Cir. 2000) (citations omitted). The inquiry is "whether the minimization effort was managed reasonably in light of the totality of the circumstances." Id. at 22. Challenged calls should be viewed in the context of the entire wiretap rather than in a "chat-by-chat analysis." Id. (quoting Hoffman, 832 F.2d at 1308).

In evaluating the Government's minimization efforts, courts look to "several factors, including: (1) the nature and complexity of the suspected crimes; (2) the thoroughness of the government's precautions to bring about minimization; and (3) the degree of judicial supervision over the surveillance process." Lopez, 300 F.3d at 57 (citing United States v. London, 66 F.3d 1227, 1236 (1st Cir. 1995)). As the First Circuit has noted, "where an investigation involves a

11

drug ring of unknown proportion, as in this case, 'the need to allow latitude to eavesdroppers is close to its zenith.'" Charles, 213 F.3d at 22 (citing Hoffman, 832 F.2d at 1308).

Here, the Defendants have failed to point to any evidence of a lack of thoroughness in the Government's precautions to bring about minimization. The Government set forth its anticipated minimization efforts in each affidavit sworn to by SA Clancy (see, e.g., December 28 Affidavit ¶¶ 125-133). The Court orders authorizing interception and continued interception of wire communications also explicitly set forth the minimization requirements to be imposed on the Government. The Defendants' argument is simply a recitation of the law with no suggestions of how the monitoring agents failed to comply with minimization requirements or identification of any calls that were not properly minimized. Given the unsupported allegations that the Government failed to minimize in a reasonable manner, the failure to identify any call that was purportedly insufficiently minimized and the authority set forth above and circumstances of this case, the Court DENIES Defendants' Motion to Suppress on these grounds.

### E. Credibility of the Informants

Finally, in challenging the probable cause supporting the wiretaps, the Defendants claim that "the government relied heavily on information provided by confidential informants in order to make its purported showing of probable cause." (Motion to Suppress at 12.) This assertion is inaccurate. The December 28 Affidavit establishes the requisite probable cause through information obtained through numerous avenues including confidential sources, controlled purchases, surveillance of the targets and analysis of telephone data. A review of the information set forth in the December 28 Affidavit clearly shows that the information provided by all these sources established that there was a fair probability that a wiretap would uncover evidence of a

crime. Information from the confidential sources was only one aspect of the probable cause calculus – no more weighted than the other factors establishing probable cause.

In evaluating the value of the confidential source information in the probable cause calculus, Defendants acknowledge that information from informants may provide the basis for probable cause. Although Defendants attack the use of unnamed informants, the First Circuit has explicitly held that unnamed informants can form the basis for probable cause so long as the issuing court can assess the credibility of the informant's information. United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002). In analyzing the weight to give informant information, a court can consider such factors as the credibility and reliability of the informant, the specificity of the information, the basis of the informant's information (i.e. whether the information is first hand or hearsay), the timeliness of the information and whether the information is corroborated. United States v. Gonzalez, 190 F.3d 668, 672 (5th Cir. 1999).

Application of these factors to the present case shows that the Court reasonably relied on the confidential informant information. The December 28 Affidavit outlined information from five informants - three of whom provided information that came from personal first-hand dealings with members of the purported conspiracy. An informant's credibility is enhanced to the extent he has provided information based upon personal observation which indicates firsthand knowledge. Barnard, 299 F.3d at 94. Information from CS-1 was directly corroborated through controlled purchases at agents' direction. This information was also timely as it was provided while the alleged criminal conduct occurred. Additionally, information from CS-1, CS-2 and CS-3 was specific, including details such as addresses and telephone numbers of conspirators.

Information from confidential informants also cross-corroborated the other informants' information (save perhaps for CS-4, who had little knowledge). Cross-corroboration of

13

information sufficiently reduces the likelihood of a lying or inaccurate informant. Id. In addition to this cross-corroboration, the information provided by the confidential sources was corroborated through other investigatory techniques – most specifically, the direct hand-to-hand cocaine buys from Noonan.

The reliability of the source information is not altered by the fact that the sources' identities remain protected – the information provided by the sources was timely, detailed and corroborated by other source information and other avenues. The source information was established as accurate information that the Court relied upon, along with the other information outlined in the affidavit, in determining that each application for a wiretap was supported by sufficient probable cause. Accordingly, the Court DENIES the Motion on this ground.

## III. CONCLUSION

For the above-stated reasons, the Motion to Suppress (ECF Nos. 76 & 77) is DENIED.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 27th day of August, 2014.